**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**JAMES P. MHINA,**

                **Plaintiff,**

                v.

**BETH VAN DOREN et al.,**

                **Defendants.**
_____

**5:15-cv-327
(GLS/DEP)**

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| **FOR THE PLAINTIFF:**<br>James P. Mhina<br>Pro Se<br>P.O. Box 133<br>Syracuse, NY 13201 | |
| **FOR THE DEFENDANTS:**<br>_Beth Van Doren_<br>Onondaga County Attorney's Office<br>John H. Mulroy Civic Center<br>421 Montgomery Street, 10th Floor<br>Syracuse, NY 13202 | KAREN ANN BLESKOSKI, ESQ. |
| _Anthony Colavita[1] and David Buske_<br>City of Syracuse Corporation Counsel<br>233 East Washington Street<br>Room 300 City Hall | AMANDA R. HARRINGTON,<br>ESQ. |

---

[1] Consistency in the spelling of this name—whether it is "Colavita" or "Collavita"—has remained elusive. (_Compare_ Dkt. No. 5 at 3 n.3, _with_ Dkt. No. 49 ¶ 79.) In his second amended complaint, Mhina uses the spelling "Colavita." (_See generally_ 2d Am. Compl., Dkt. No. 24.) Likewise, in the pertinent motion to dismiss, it is spelled "Colavita." (_See generally_ Dkt. No. 133, Attach. 2.) Thus, the court uses that spelling. The Clerk is directed to amend the docket accordingly.

Syracuse, NY 13202

**Gary L. Sharpe
Senior District Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiff *pro se* James P. Mhina brings claims under 42 U.S.C. § 1983 and New York State common law against Beth Van Doren, Assistant District Attorney for Onondaga County, and Anthony Colavita and David Buske, City of Syracuse Police Detectives. (2d Am. Compl., Dkt. No. 24.) Pending are Van Doren's motion to dismiss, (Dkt. No. 128), and a motion to dismiss filed by Colavita and Buske, (Dkt. No. 133). For the reasons stated below, Van Doren's motion is granted and Colavita's and Buske's motion is granted in part and denied in part.

### II. Background

**A. Facts**[2]

In his prolix second amended complaint, Mhina generally alleges that defendants cooperated to file and prosecute criminal charges against him

---

[2] The facts are drawn from Mhina's second amended complaint and presented in the light most favorable to him. Citations to this pleading are to the CM/ECF-generated page numbers.

between 2006 and 2009. (*See generally* 2d Am. Compl.) Mhina appears to have been arrested and charged by the City of Syracuse Police Department for petit larceny, attempted grand larceny, and possession of a forged instrument. (*Id.* at 10, 12-13.) Additionally, according to public records, Mhina was charged with falsifying business records and scheme to defraud. *See People v. Mhina*, 110 A.D.3d 1445, 1446 (4th Dep't 2013).[3] In 2009, upon a jury verdict, Mhina was convicted of three counts of criminal possession of a forged instrument in the second degree, two counts of falsifying business records in the first degree, and one count of scheme to defraud. *See id.* at 1445-46. His conviction was subsequently overturned on appeal. *See id.* at 1447. Mhina alleges that he was released after serving more than seven-and-a-half years in prison. (2d Am. Compl. at 3.)

As best the court can decipher, Mhina alleges the following. In 2006, Woodhaven Apartments failed to return a $1,700.00 check to him and instead turned it over to the Syracuse Police Department. (*Id.* at 2, 7.) Defendants then coerced Woodhaven Apartments and its owner to file

---

[3] The court may look to matters of public record, including case law, when considering a motion to dismiss for failure to state a claim. *See Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998).

criminal charges of attempted grand larceny.  (*Id.* at 3.)  In October 2006, Colavita and Buske arrested Mhina for petit larceny and attempted grand larceny.  (*Id.* at 10.)  Colavita and Buske, who are white, "used bigotry" when they arrested Mhina, "a black man of African origin."  (*Id.* at 12.)  They called Mhina a "'niger'" and said "that he was going to be at home with other 'nigers' where they belong, in prisons and in jails."  (*Id.*)[4]  In June 2007, while investigating another charge, Colavita and Buske coerced a Bank of America employee to lie and fraudulently bring charges against Mhina.  (*Id.* at 12-13.)  Colavita and Buske also testified at Mhina's trial and "lied using false testimony of [the bank employee]."  (*Id.* at 13-14.)

"When . . . Van Doren was conducting and performing administrative [sic] and investigating . . . Mhina, [she] coerced [a Citizens Bank employee] to change a true bank record statements [sic] to fit a crime of petit[] larceny."  (*Id.* at 19.)  Van Doren used this statement to certify an arrest warrant for Mhina.  (*Id.*)  She also used "false, fraudulent, coerced evidence" during Mhina's trial.  (*Id.* at 21.)  Additionally, Van Doren interfered with Mhina's "corporate business contracts profits" when she

---

[4] Mhina also alleges that Colavita and Buske "are known in the black neighborhoods to b [sic] real racist, always violating black peoples' civil and constitutional rights during arrests." (2d Am. Compl. at 12.)

4

coerced the Citizens Bank employee "to change true bank statements." (*Id.* at 22.)[5] In 2008, defendants also coerced a bank employee to lie and "bring" fraudulent criminal charges of possession of a forged instrument. (*Id.* at 55.) It is far from clear how all of these events are related, if at all.

Mhina seeks, among other relief, "$100,000,000,000.00" in damages. (*Id.* at 15.)

**B.    Procedural History**

Mhina initially filed suit against over a dozen defendants on March 20, 2015. (Compl., Dkt. No. 1.) After various dismissals, (Dkt. Nos. 11, 22, 115), the only defendants remaining are Van Doren, Colavita, and Buske.[6] Mhina's second amended complaint can be read as bringing claims of false arrest, malicious prosecution, and conspiracy under both Section 1983 and New York State common law. (*See generally* 2d Am. Compl.) He also brings a Section 1981[7] claim against Colavita and Buske

---

[5] Mhina alleges that he had "very profitable, 10-20 year guaranteed irrevocable, good letters of credit 235+ in number," (2d Am. Compl. at 37), from business associates worldwide, (*id.* at 46).

[6] Twice, the court has had to deny premature summary judgments motions by Mhina. (Dkt. Nos. 12, 56.) Mhina also filed an improper and baseless motion for default judgment, (Dkt. No. 98), which was denied, (Dkt. No. 115 at 12). Various other improper filings by Mhina have been stricken, (*see, e.g.*, Dkt. No. 20), and he has had a premature appeal dismissed by the Second Circuit, (Dkt. No. 159).

[7] *See* 42 U.S.C. § 1981.

and a New York State common law tortious interference claim against Van Doren. (*Id.*)[8]

Pending are Van Doren's motion to dismiss, (Dkt. No. 128), and Colavita's and Buske's motion to dismiss, (Dkt. No. 133).

### III. Standard of Review

Federal Rule of Civil Procedure 12(b)(6) provides that a cause of action shall be dismissed if a complaint fails "to state a claim upon which relief can be granted." For a full discussion of the governing standard for Rule 12(b)(6), the court refers the parties to its prior decision in *Ellis v. Cohen & Slamowitz, LLP*, 701 F. Supp. 2d 215, 218 (N.D.N.Y. 2010).

### IV. Discussion

**A. Van Doren**

In her motion to dismiss, Van Doren argues that she is entitled to absolute prosecutorial immunity. (Dkt. No. 128, Attach. 2 at 1-5.) The court agrees.

Mhina alleges that Van Doren coerced others to make certain false statements and file criminal charges. (2d Am. Compl. at 3, 5, 19, 22.) But

---

[8] As a *pro se* litigant, the court must read Mhina's pleadings "liberally and interpret them to raise the strongest arguments that they suggest." *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (internal quotation marks and citation omitted).

absolute prosecutorial immunity applies to the falsification of evidence, the coercion of witnesses, and the solicitation of perjured testimony. *See Taylor v. Kavanagh*, 640 F.2d 450, 452 (2d Cir. 1981). Mhina also alleges that Van Doren used a fraudulent, coerced statement to certify an arrest warrant. (2d. Am. Compl. at 19.) This too is covered because "prosecutors are immune from suit based on their actions in . . . procuring [an] arrest warrant." *Barr v. Abrams*, 810 F.2d 358, 362 (2d Cir. 1987); *see Pinaud v. County of Suffolk*, 52 F.3d 1139, 1150 (2d Cir. 1995). Additionally, Van Doren is immune from Mhina's allegations that she used false, fraudulent, coerced evidence during trial and prosecuted him without cause. *See Harrison v. County of Nassau*, No. 15-CV-2712, 2016 WL 4083381, at *4 (E.D.N.Y. Aug. 1, 2016) (noting absolute immunity applies "even where the prosecutor knowingly prosecutes an innocent person"); *Moye v. City of New York*, No. 11 Civ. 316, 2012 WL 2569085, at *9 (S.D.N.Y. July 3, 2012) ("A prosecutor's presentation of false evidence, or subornation of perjury at trial, is protected by absolute immunity.") (collecting cases). And to the extent that Mhina alleges a conspiracy claim against Van Doren, she is immune. *See Pettus v. City of New York*, No. 10–CV–1442, 2011 WL 4458901, at *10 (citing *Dorman v. Higgins*, 821

7

F.2d 133, 139 (2d Cir. 1987)).

However, "when a prosecutor performs an investigative or administrative function rather than a prosecutorial one, absolute immunity is not available." *Barbera v. Smith*, 836 F.2d 96, 99 (2d Cir. 1987) (internal citations omitted). In recognition of this,[9] Mhina alleges, "When defendant Beth Van Doren *was conducting and performing administrative and investigating* [sic] plaintiff . . . Mhina, coerced [a Citizens Bank employee] to change a true bank record statements [sic] to fit a crime of petite larceny." (2d Am. Compl. at 19 (emphasis added).) He also alleges that Van Doren tortiously interfered "during [the] investigative stage" of his criminal case. (*Id.* at 22.) But "[e]ven in a *pro se* case . . . although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation marks and citation omitted); *see Green v. McLaughlin*,

---

[9] In a Memorandum-Decision and Order addressing Mhina's original complaint, in recognition that Mhina might be able to allege that Van Doren was acting in an investigative or administrative role such that absolute immunity would not apply, the court allowed Mhina to replead claims against Van Doren in his amended complaint. (Dkt. No. 11 at 6-9.)

8

480 F. App'x 44, 46-47 (2d Cir. 2012). In other words, Van Doren was not performing an investigative or administrative function just because Mhina says she was, and absolute immunity applies.

B. **Colavita and Buske**

1. *Conspiracy*

The court agrees with Colavita and Buske that Mhina's conclusory allegations of a conspiracy are insufficient to state a claim. (Dkt. No. 133, Attach. 2 at 8-9.) "Even a *pro se* plaintiff must allege some factual basis to substantiate his conclusion that defendants conspired together to deprive him of his constitutionally protected interests." *Studifin v. N.Y.C. Police Dep't*, 728 F. Supp. 990, 993 (S.D.N.Y. 1990) (internal citation omitted). As Colavita and Buske point out, Mhina has failed to provide any facts from which it could be reasonably inferred that a conspiracy existed. (Dkt. No. 133, Attach. 2 at 9.) Mhina merely alleges that Colavita and Buske coerced certain individuals, (*see, e.g.*, 2d Am. Compl. at 5), which is insufficient, *see Corsini v. Nast*, 613 Fed. App'x 1, 4 (2d Cir. 2015) ("[C]omplaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed[.]") (internal quotation marks

9

and citations omitted).¹⁰

   2.   *Malicious Prosecution*

The elements of a malicious prosecution claim are: "(1) the defendant initiated a prosecution against plaintiff, (2) without probable cause to believe the proceeding can succeed, (3) the proceeding was begun with malice[,] and[ ] (4) the matter terminated in plaintiff's favor." *Rentas v. Ruffin*, 816 F.3d 214, 220 (2d Cir. 2016) (internal quotation marks and citation omitted). Colavita and Buske argue that Mhina has not sufficiently alleged the first and third elements. (Dkt. No. 133, Attach. 2 at 9-11.)¹¹

Colavita and Buske argue that there are no allegations to infer that they filed an accusatory instrument or played an active role in Mhina's prosecution. (*Id.* at 10-11.) But Mhina alleges that Colavita and Buske coerced others to file criminal charges. (2d Am. Compl. at 3.) He also

---

¹⁰ Although Colavita and Buske focused on conspiracy in the context of Section 1983, (Dkt. No. 133, Attach. 2 at 8-9), Mhina's complaint arguably may be read as containing a claim for civil conspiracy under New York State law, (*see generally* 2d Am. Compl.). However, such a claim fails for the same reasons that his Section 1983 conspiracy does—there are no factual allegations from which to infer a conspiracy. *See McSpedon v. Levine*, 158 A.D.3d 618, 621 (2d Dep't 2018).

¹¹ Colavita and Buske did not challenge the sufficiency of the fourth element—*i.e.*, that the matter terminated in Mhina's favor. Although Mhina's claim may be vulnerable on that ground, *see Martinez v. City of Schenectady*, 97 N.Y.2d 78, 84-85 (2001), the court expresses no opinion on that issue at this time because it was not raised.

alleges that they coerced a Bank of America employee "to lie[] and fraudulently bring malicious charges against [him]." (*Id.* at 13.) Although a close call, in drawing all reasonable inferences in Mhina's favor, it cannot be said at this stage that Colavita and Buske did not "play[] an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act." *Manganiello v. City of New York*, 612 F.3d 149, 163 (2d Cir. 2010) (internal quotation marks and citation omitted).

Colavita and Buske also argue that there are no allegations showing actual malice. (Dkt. No. 133, Attach. 2 at 11.) But Mhina alleges that they called him a "'niger'" when they arrested him and told him "he was going to be at home with other 'nigers' where they belong, in prisons and in jails." (2d Am. Compl. at 12.) Although not explicitly alleged to be connected to Mhina's prosecution (as opposed to his arrest), in drawing all reasonable inferences in favor of the plaintiff at this stage, actual malice is sufficiently pled. *See Tuff v. Vill. of Yorkville Police Dep't*, 6:16-CV-473, 2017 WL 401241, at *13 (N.D.N.Y. Jan. 30, 2017) ("[A]ctual malice . . . could reasonably be inferred from allegations that [p]laintiff was ticketed, and

11

treated harshly, because of his race.").[12]

   3.   *Section 1981*

The same racial allegations also preclude dismissal of Mhina's Section 1981 claim. A Section 1981 claim has the following elements: "(1) plaintiff[] [is] [a] member[] of a racial minority; (2) defendants' intent to discriminate on the basis of race; and (3) discrimination concerning one of the statute's enumerated activities." *Brown v. City of Oneonta*, 221 F.3d 329, 339 (2d Cir. 2000). "[I]t is well settled that an allegation of arrest based on racial discrimination satisfies the third prong." *Hernandez v. City of Albany*, No. 1:12–CV–1614, 2015 WL 364183, at *4 (N.D.N.Y. Jan. 27, 2015) (internal citation omitted). Colavita and Buske argue that Mhina "has not set forth any allegations that would causally link his 'African origin' and his arrest by [them]." (Dkt. No. 133, Attach. 2 at 12.) But that blatantly ignores Mhina's specific allegations that Colavita and Buske used explicit racial slurs when arresting him.[13]

---

[12] *Tuff* examined a malicious prosecution under New York State law. *See Tuff*, 2017 WL 401241, at *13. But "[t]he elements of a malicious prosecution claim under [S]ection 1983 are derived from applicable state law." *Swartz v. Insogna*, 704 F.3d 105, 111 (2d Cir. 2013). As such, for the same reasons Mhina's Section 1983 malicious prosecution claim survives, his New York State law malicious prosecution claim survives.

[13] The statute of limitations for a Section 1981 claim is three years. *See Patterson v. County of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004). The arrest having allegedly occurred in October 2006, (2d Am. Compl. at 10), it would seem that Mhina's claim is barred. But because

12

*4.   False Arrest*

The court agrees with Colavita and Buske that Mhina's Section 1983 false arrest claim is barred by the applicable three-year statute of limitations. (Dkt. No. 133, Attach. 2 at 13-15.) They correctly argue that "[Mhina] . . . does not set forth any allegations that would indicate that his false arrest claim is grounded in a Fourth Amendment violation or that any evidence obtained as a result of his arrest was the *sine qua non* of the prosecution's case." (*Id.* at 14 (internal citations omitted).) "Rather, the complaint suggests that [Minha]'s arrest was the result of an ongoing investigation by [d]efendants and that [Minha] was ultimately convicted based on the allegedly false testimony of a bank manager." (*Id.* at 14-15 (internal citation omitted).) Thus, Minha's false arrest claim accrued at the time of his arrest, which he alleges is October 2006, and accordingly is time-barred. (*Id.* at 15.)[14]

However, Colavita and Buske do not address Minha's New York

---

Colavita and Buske did not raise this issue in their motion, the court declines to address it.

[14] Even if Minha's "actual arrest date" was February 4, 2008, as Colavita and Buske allege, (Dkt. No. 133, Attach. 2 at 14 n.1), his Section 1983 false arrest claim would be untimely.

13

State law cause of action for false arrest.[15] Such a claim is governed by a one-year statute of limitations that runs from a plaintiff's release from confinement. *See Coleman v. Worster*, 140 A.D.3d 1002, 1004 (2d Dep't 2016) (collecting cases). Minha alleges that he was released on October 27, 2014, which makes his New York State law false arrest claim timely.[16]

   5.   *Tortious Interference*

In response to Colavita's and Buske's motion to dismiss, Minha seems to attempt to allege a tortious interference claim against the two detectives. (Dkt. No. 139 at 4; Dkt. No. 140, Attach. 1 at 3-4.) But Minha made no such allegations in his second amended complaint, which is the operative pleading. (*See generally* 2d Am. Compl.) That is, Minha only alleged tortious interference against Van Doren. (*Id.* at 22.) "[C]ourts are not required to consider claims that are raised for the first time in a *pro se* plaintiff's papers in opposition to a motion." *Wiltshire v. Wanderman*, No. 13–CV–9169, 2015 WL 4164808, at *1 n.3 (S.D.N.Y. July 10, 2015) (collecting cases). The court refuses to do so, especially since Mhina has

---

[15] Once again, Colavita and Buske ignore at least one potential defense. For example, probable cause provides a complete defense to a false arrest claim. *See Mahoney v. State of New York*, 147 A.D.3d 1289, 1291 (3d Dep't 2017); *Nasca v. Sgro*, 130 A.D.3d 588, 589 (2d Dep't 2015). But this argument was not raised so the court does not consider it.

[16] As noted above, Minha filed his original complaint on March 20, 2015. (Compl.)

14

been given at least three bites at the apple already.[17]

## V. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that Van Doren's motion to dismiss (Dkt. No. 128) is **GRANTED**; and it is further

**ORDERED** that Colavita's and Buske's motion to dismiss is **GRANTED IN PART** and **DENIED IN PART** as follows:

**GRANTED** as to Mhina's conspiracy and Section 1983 false arrest claims; and

**DENIED** in all other respects; and it is further

**ORDERED** that the following claims remain against Colavita and Buske: malicious prosecution claims under Section 1983 and New York State law; a Section 1981 claim; and a false arrest claim under New York State law; and it is further

**ORDERED** that the Clerk terminate defendant Van Doren from this

---

[17] To the extent Mhina may be construed as asserting a claim of perjury based on allegations that any of the defendants lied under oath, either in an affidavit or through testimony before the grand jury or at trial, such a claim is not cognizable. *See Luckett v. Bure*, 290 F.3d 493, 497 (2d Cir. 2002). Additionally, although Mhina sued Van Doren "under her official capacity," he did not allege any policy, practice, or decision of a final policymaker to support a *Monell* claim. *See Monell v. Dep't of Social Servs. of City of N.Y.*, 436 U.S. 658, 691 (1978); (*cf.* Dkt. No. 5 at 16-17.)

15

action; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

August 1, 2018
Albany, New York

Gary L. Sharpe
U.S. District Judge